Now I've lost my thing, but I guess the next case is, yes, we'll hear the next case, which is Bernhardt v. The County of Los Angeles. Good morning, Your Honors. May it please the Court, my name is Charles Miller, speaking on behalf of the plaintiff and the appellant, Angela Bernhardt. I want to thank, on behalf of Ms. Bernhardt, the Court for the time it has taken over the years to deal with the issues that she's raised in her case. It's a difficult problem that her case raised. Well, could you help me? What is it that she wants now? What does she want now are two things. Number one, she wants a lawyer in this case. In this case? In this case. But aren't you here? I'm only representing her on appeal. Well, what is this case? This case is a case before the trial court. Here are issues outlined by this court in its 2003 decision, issues that this court said were serious issues as to whether the policy or practice of the county constitutes a violation of the rights of the plaintiff, Bernhardt, to a lawyer. And the court entered a preliminary injunction, or ordered the district court to enter a preliminary injunction, to assure that she would have a lawyer to address that issue. But that's an abstract issue. That's an abstract issue. It's not relief for her. So I thought that what is the relief that we, in the earlier opinions, I thought what we were saying was that she may have suffered damages as a result of the imposition of the policy in her underlying excessive force case. And that, therefore, she could pursue that claim for damages arising out of the imposition of the policy on, in her case, which has now been dismissed. In the 2002 case, the court did that. Yeah. She has a potential damage case here which she's entitled to pursue. Right. And to facilitate that, in 2003, the court said, directed the court to enter a injunction that would prohibit the county from offering a lump sum settlement just in the current case. It wasn't a general prohibition. So that she could get a lawyer in this case to represent her in pursuit of that relief. But you got an injunction that tells the county that they can't offer to settle this case, the one she wants to go to trial on, by making a lump sum offer, didn't you? Only by making a lump sum offer. Right. Okay. The injunction was inadequate to achieve its purpose. But what you told us a few minutes ago that she wants is a trial. And as I understand it, the district court is ready, willing, and able to conduct the trial that she wants. But you're here challenging the district court's refusal to further modify the injunction to add the words or settle. Correct. Right? That's correct. Because without those words, the injunction has not achieved the purpose that this court intended. Well, but if the county is enjoined from offering that settlement term, the only person who can choose to accept such a settlement is Ms. Bernhardt. So she's really asking us for an injunction to enjoin her from accepting a settlement that might be a lump sum settlement, should she and she alone decide to accept it. Actually, the very question I asked when I first heard this case is, isn't this seeking an injunction against yourself? And isn't the answer yes? No. I think the answer is no. It is not yes. Well, who is it who's being enjoined? The county is being enjoined from accepting a lump sum offer. From her. And the contention is as follows. Yes. And here is why. Because under California law, California ethics law, lawyers have an affirmative obligation to explain to their clients how they can settle their cases. But it's her case. It is her case. That's correct. So she can decide to resolve it any way that she wants. May I make this point? Yeah. Go ahead. The point I want to make is because of that power today, she cannot get a lawyer to represent her. Because lawyers, the bar that serves these cases, knows that the county has the ability to terminate the case at any time without any, with a waiver of attorney's fees.  They will take the case. I said it was complex. Yeah. It is. And you've got the holding in Jeff D., with which some of us may disagree. But you have the Supreme Court saying that you can, in an individual case, require that the court-granted fees be waived. So you've got to get around all these things. There are a lot of things to get around here, and I'll speak in a second about how she's tried to get around them. But I want to stress that there are two issues before the court. The first issue we ask the court to decide is whether the injunction should have been modified in the manner we request, so that there would be a lawyer to present the issues, the difficult issues that this court specified in its 2003 decision, to the district court so that the merits issues can be properly heard. Now, the county shouldn't have any interest in objecting to that. What's the legitimate interest of the county in objecting to this other than the knowledge that unless it's done, she won't get a lawyer? And that's not a legitimate interest. I guess I'm ‑‑ I know this is complicated, but I'm trying to unravel it. If she and she alone now has the power in her case to decide, I will not settle this case for lump sum, including all attorney's fees, then the only reason that a lawyer won't represent her is because he or she is afraid that Ms. Bernhardt down the road might have a change of heart and decide to compromise her case on those terms. That's right. The county can't do it because there's an injunction that forbids the county from doing it. Only from offering it, not from accepting it. Right. But the acceptance has to be her offer. The county can't offer. Well, furthermore, the only injunction, as I understand it, that you would be able to get is that they can't do it, she can't accept it if it is offered as part of a policy. Because I don't see how we can say that no matter what happens, she can't accept this. Because that then runs you into what the Supreme Court has said you have to permit. Maybe if I state what the second part of the case is, I'll cast a little more light on what we're saying in the first part. Maybe. The second part of the case is an appeal from the district court's denial on mootness grounds of the request for declaratory relief. The summary judgment motion that was denied sought declaratory relief that there is a policy  That's the predicate to her damage suit. The issue of damages itself has not been tried yet. But before you get the damage, you've got to show a liability. That was the showing. Court said your claim for relief on that, declaratory relief, is moot as according to the Court of Appeals decision in 2002. We believe that's a mistake. The Court of Appeals in 2002 said the request in the original complaint, which sought relief so that she could get a lawyer in her underlying case, her damage suit, against the county, that's moot because that case had been dismissed and affirmed on appeal. The Court did not say that the issues currently on the table were moot. In fact, the Court laid out in its opinion what those issues were. Well, if she could not prevail in the underlying suit because it was without merit and it's been dismissed and that's been affirmed, then how could a lawyer have assisted her and how has she been, how can she show that she was damaged and so therefore isn't it in that sense moot because she can no longer show that she has any damages, suffered any damages? I don't think so, Your Honor. I think this Court in this last 2003 opinion made this distinction. It said she has a tough showing. She's got to show that if I had had a lawyer in my underlying case, I would not have been dismissed. In fact, I would have prevailed. Presumably I would have had some damages. It's a hard showing. The Court said so, but it's not foreclosed. The Court's going to have to hear evidence in her damage claim that says if I'd have had a lawyer, this is what the lawyer would have done, which I didn't know about. I'm just a, I'm not a lawyer. And had I had that, I would have had a better chance of winning. That has to be the basis for the damages. Right. Now, we haven't had that trial yet. We haven't got that far because she hasn't got a lawyer in this case to present that argument. But now we're back to the first issue that you asked us to decide. And I'm, I still can't get past the problem I'm having that, to use the analogy, she holds the key to her own jail cell here. It's entirely her decision as to whether or not she settles. Your Honor, I can only answer it this way. It would be nice if it were her decision alone, but it isn't her decision alone because she can't get any lawyer who knows how to try civil rights cases to take her cases under that circumstance. Even though she may have the greatest intention and a total commitment not to settle this case. Does she have a right to counsel in a civil rights action? What constitutional right is being abridged here? Well, there's a constitutional and a statutory provision. The statutory provision is implicit in Section 1988, recognized repeatedly by the Supreme Court. Of fees if she has a lawyer, but I'm asking. The purpose of the fee is so she can get a lawyer. I mean, the court has repeatedly said the purpose of that statute is to get lawyers. So you want us to infer that she has a statutory right to counsel because of the existence of the Fees Act. Correct. And I don't think that's a hard leap because the Supreme Court has repeatedly said that's the purpose of 1988. But, counsel, she's got a 1983 action, and a statutory violation doesn't equate to a constitutional violation. So what's the constitutional? The constitutional violation, this is particularly hard for me, but it's spelled out in the 2003 decision of this court, is a supremacy clause argument, which this court said independent of Section 1988, the plaintiff may have a claim under the supremacy clause if she can demonstrate that the county's policy is preempted. But this is what, where we're back to what's bothering me, which is you have to show as well that it's the policy that is, at least you're going to have to show that it's the policy that's preventing you from getting the lawyer. And the district court said that's not the case. Well, let me speak to that. I have a slight point because that's exactly right. Here's the showing on that point. First, we have the attorney for the county in a letter quoted in the earlier opinions here describing the practice of the county, a perfectly sensible policy, by the way, from the county's point of view. You have the plaintiff trying repeatedly to get a lawyer and having been turned down by multiple people in the civil rights bar in the Los Angeles area. You have 11 declarations of lawyers who say, I wouldn't take her case or others like it because of the county's policy. You have a study which showed over a 10-year period the number of settlements made in civil rights cases, all of which are virtually all of which were lump sum, which I offered I think not to only simply to show that the lawyers' views on this were reasonable. And you have the fact that the county, which has probably got the best access to civil rights lawyers in the area, that nobody knows better what the civil rights bar here is in the Los Angeles area than Los Angeles County because they're the defendants. And in all these years, the county hasn't proffered one lawyer who would come up and say, yes, I'll take her case. Your policy doesn't stop me from doing it. So that's the showing, it seems to me, that makes it clear that. What have we shown? We've shown that there is a practice, call it a policy or a practice. The Evans case used both words. It's been in effect for a long time. The civil rights bar in this area believes that it's in place and believes that its impact is that they will never get fees in these cases because they'll always get waived when the county offers a settlement. Well, but in the – I thought that in the last decision of this Court, we said, whatever year that was, that we wouldn't – that we denied the injunction to prevent the county from offering to settle on those terms. You affirmed the dialogue. Yeah, yeah, right. What do I say about that? Affirmed the denial. How do I get around that? Yeah. That was a brief opinion in which the Court obviously treated it as a request to modify a preliminary injunction and said, given the very narrow review we give in such cases, we are not going to overturn it and affirmed it. It seems to me that we are now in a different posture in this case, leaving aside the intervening decision in the Pony case, which did foreclose the only other potential avenue for getting a lawyer. But now we're in a different posture anyway. We're now not like a preliminary injunction. The failure to get a lawyer now basically ends the game for Mrs. Bernhardt. She can't try these issues that are so complicated that we're having a hard time even understanding them ourselves, and she's not a lawyer. And despite the opinions of this Court, which are very helpful, there are still some very difficult issues here to understand how the Supremacy Clause works, what the impact of it is. What's the difference between a preliminary injunction and a permanent injunction in this context where we're only talking about one thing? Because I think in a preliminary injunction you have a four-factor showing. You have to make public interest, irreparable binge, all those things. And that's what the Court said. I'm not going to reweigh. But when you're in a final injunction, this is like a final injunction on this issue of whether she can have a lawyer in this case to present this case, because if it's not resolved now, there is no case. I'm suggesting that in this almost like a case within a case sense, the injunction to get a lawyer in this case is before the Court as a final matter. I want to save a little bit of time for rebuttal, but I'd like to suggest one more thing before I sit down, and that is that we think here based on the showing that I've just outlined, that the District Court should have found at least that Bernhardt was unable to secure a lawyer in this case because of the county's conduct. Having gone at least that far based on the showing that was made, it wasn't even necessary for the Court then to go on and decide these difficult legal questions, whether that violated the Constitution, whether that violated the statute. That finding alone could have enabled the Court to suggest to the parties some discussion for a possible modification of the county's approach that would preserve the interests of the county, at the same time not deprive people of a lawyer. How could the Court do that if it found a disputed issue of material fact over whether or not the policy even exists? Because, Your Honor, I'm suggesting that that was an incorrect conclusion. There is no issue of material fact. The practice clearly exists, and it has deprived people like Bernhardt of a lawyer, and she can't get a lawyer because of the policy. The problem is that we've got declarations from key witnesses in the county saying that, no, there is no such policy, and whether they're true or not on summary judgment, we can't resolve. The only thing those affidavits, please look at them with some care. Every single one of them always uses the word only. It basically says we don't apply this in 100 percent of the cases. That's the only thing it says. It doesn't say we don't do it in most cases. If we were to adopt your argument in other non-civil rights cases, you, I suppose, could make the same argument that a plaintiff in another contingent fee case might not be able to get a lawyer to pursue a personal injury claim because the insurance company always offers a settlement that includes lump sum payment of attorney's fees as a factor in evaluating the worth of the case. I don't want to decide too many cases in my remaining time. I'm happy enough to disassign cases that arise under a federal statute that specifically addresses the point and makes having an attorney an important federal interest. Thank you. Well, he's done a pretty good job for his client, so let's hear it from the county. Good morning. My name is Richard Kudo. I'm appearing here on behalf of the Appellate County of Los Angeles. I think Your Honor's question this morning points to, I believe, the difficulties that Ms. Bernhardt has with her case. With respect to the injunction issue, there really is no issue there. She already has her injunction. The court below has already decided that the county cannot make an offer to provide her with a lump sum settlement. As Your Honor has just said, the only way that the county could actually settle the case on a lump sum basis is if she, in a moment of weakness, I suppose, goes ahead and makes an offer that the county accepts. But that's all under her control. The county really has nothing to do with that whatsoever at this point. And she, now with her idea of trying to get a broader injunction where the county is prevented from even settling that sort of, making that sort of settlement, I think that's improper, and it goes against Ms. Bernhardt's own best interest where she would be foreclosed from a way in which to resolve her own case. Well, as to her claims that the policy prevents her from retaining counsel, I believe that that's not really a true statement, Your Honors. Mr. Miller here has argued quite forcefully on her behalf, and he flew in from Washington, D.C. In addition, she's had counsel ghostwriting her papers virtually from day one. Mr. Mitchell has represented her in an unofficial capacity in the district court and an official capacity up here in this court, and has virtually ghostwritten all of her pleadings, her complaints, motions, oppositions to motions. Virtually all of the paperwork that's been served out of the plaintiff has been served out of his office. So for her to suggest that she can't retain counsel because of this alleged policy, I believe, is a little bit disingenuous. And besides which, I think Your Honors have pointed out, there is no- Ms. Attorneys, the Civil Rights Bar has a pretty big stake here, I guess, in a sense. You're absolutely right, Your Honors, and I think- Which tends to suggest that there's a policy. Well, Your Honor, may I also point out one other thing is that as far as I know, there is no right to have an attorney in a civil action, which she's proposing here. And it's the first time it's really been articulated in the sense is that Section 1988 implies some sort of right to have an attorney, and there is nothing that anyone has ever cited in any of the moving papers that suggests that. So we think that as far as that's concerned, Your Honor, we don't think that's proper. There is no constitutional right to have an attorney in a civil action. In addition, she wants a broad injunction that would- on a lump-sum basis in any case. Well, we think that's wrong for a number of reasons, Your Honor. Number one, the statute doesn't say that lump-sum settlements are prohibited. The Supreme Court has already articulated in Evans v. Jeff D. that a waiver of fees was not invariably inconsistent with the goal of combating civil rights violations. And also the Supreme Court said that a blanket prescription against that sort of settlement would itself impede the vindication of civil rights. And finally, that sort of broad injunction really affects plaintiffs in a number of cases that are parties here. And who knows? Those parties, those plaintiffs in those other cases that aren't before this Court might want a lump-sum settlement. So for them to be foreclosed from ever settling a case on that basis without a right to notice and to be heard, we think is totally improper, Your Honors. I think the bottom line in this is whether another plaintiff in an unrelated lawsuit is able to settle a civil rights case in any manner he or she chooses really has no bearing on whether or not Ms. Bernhard can or cannot retain counsel in this case. Her point really is, it seems to me that her case has, she's got to look at the actual merits of the case. And from our point of view, the merits of her case really are quite low. I think this Court in a prior published opinion said that it doubts that her claim for damages was plausible. And we share that view. The other point I'd like to mention is the way in which the case entitled Pony v. County of Los Angeles affects this case. Pony was a case out of this circuit in which the issue there was whether or not the client was entitled to assign her right to statutory fees under Section 1988. This Court held that the right to fees under that statute was personal to the client and did not belong to the attorney. An assignment of that provision or even an attempt to assign that provision was void as a matter of law. Well, when you apply that to this case, Ms. Bernhard's claim is that the alleged policy prevents her from entering into an agreement for representation in exchange for the assignment to seek attorney's fees under the Fees Act or to waive those rights. Pony holds that such an assignment is void as a matter of law. Well, then, if that's the case, then regardless of whether the policy exists or doesn't exist, Ms. Bernhard can never obtain that which she seeks in her lawsuit, the right to exchange representation for the right to assign the fees. Put another way, Ms. Bernhard, based on the Pony case, can never show any proximate cause between the alleged violation and her right to an attorney based on the Fees Act. Thus, if she went to trial and was even able to prove a statute, policy, or practice and then was able to prove that no attorney would represent her, she wouldn't be able to show proximate cause because the linkage between the alleged violation and the right to assign the fees was already held void as a matter of law. She could never obtain that remedy. So we believe that, in effect, not only the appeal but her entire lawsuit should be dismissed because she could never really state a claim that would be legal. That is, she may never obtain the relief that she seeks by reason of the fact that if she were given that, that would be to provide her with something that's void as a matter of law. So we think the Pony case, Your Honor, really is quite strong on our side to prevent her from moving forward with the lawsuit at all. I guess I'm having trouble understanding that because of what we said in Bernhard 1. I understand, Your Honor. But what Pony, what Ms. Bernhard wants in this lawsuit is the right to be able to exchange representation for the right of an to her, for her right to assign a right to pursue attorney's fees under the statute. Well, she can't ever assign that right to pursue fees under the statute, under the holding of Pony. And so what she's seeking in the lawsuit can never be accomplished. That's the issue that's raised by the Pony case. So the one last thing, Your Honor, Your Honors, I'd like to raise is the preemption claim. Now, we believe that this appeal can be disposed of without ever reaching the constitutional issues. But I raise this only because it seems a case law is pretty solid on the proposition that the supremacy clause by itself doesn't create rights under Section 1983. And we cited the case of White Mountain Apache Tribe for that proposition. And in the reply brief, Ms. Bernhard stated that White Mountain was overruled by Golden State Transit Corp. We believe that's incorrect, Your Honors. Golden State Transit Corp doesn't say that. In fact, Golden State Transit Corp, and I apologize, I profess that I don't exactly understand the entire holding of that case. But I do know this. It does say that the supremacy clause of its own force does not create rights under Section 1983. Now, that's a little broader proposition than what we cited White Mountain Apache Tribe for, because in that case, White Mountain, that case stood for the proposition that the right enforceable under 1983 could never be, doesn't exist under field preemption. In Golden State Transit, it seems a lot broader where the Supreme Court says the supremacy clause of its own force does not create rights enforceable under 1983. It's much broader. It doesn't limit it to field preemption. And I just wanted to bring it to your attention because we've been, in the reply brief, as I said, told that White Mountain was overruled. In summary, Your Honor, we think that this Court's prior decisions in the Bernhard cases for claims for prospective relief were held to be moot. And that's law of the case. That should be the case now. She already has her injunction. There's nothing more that she should be able to get. And I think Your Honor was correct in asking, well, what's the difference between a permanent injunction and a preliminary injunction in this case? Well, really nothing because the preliminary injunction prohibits us from offering any sort of lump sum settlement. Everything else, if the case is disposed of, there's no reason for an injunction to proceed forward with respect to her. To the extent that her prospective claim was not moot, she has her preliminary injunction, as I've stated before, and she's entitled to her damage claim, which I assume we're going to go to trial on at some point in time in the district court. And most importantly, under the holding of the Pony case, she cannot show proximate cause. That her factual premise is void as a matter of law, and we think that the district court ruled appropriately, and the grants for partial summary judgment in the county's favor should be affirmed, and a denial of summary judgment in her case should be affirmed also. If the court has any questions, I'd entertain them. Otherwise, I'd submit, Your Honors. Dr. Peterbien. Thank you. May I please the court? I appreciate county counsel doing a better job than I could have done in explaining how the Pony case has foreclosed all other options to Ms. Bernhardt. I'll leave it at that. Yeah. Ms. Bernhardt, if, as county counsel said, having a lawyer is solely within Bernhardt's control, we wouldn't be here. It's precisely because it is not within her control at this point, notwithstanding the injunction, that we are here. Ms. Bernhardt would like nothing better than to be able to say with the injunction, I go get a lawyer, but you can't get a lawyer because the lawyers won't buy it. I still don't understand why the only practical obstacle to a lawyer agreeing to take Ms. Bernhardt's case, given the existence of the current injunction, is a fear that the client will decide to settle the case by accepting an amount of money which is not enough to cover the lawyer's fees and the litigation. Right. Now, just take that thought, Your Honor, and add this to it. And is that fear a realistic fear? Yes, because for 10 years or 20 years, that's happened in virtually every case like this when it gets near a judgment. But the other cases didn't have the injunction prohibiting the county from making the offer. In this case, it's totally up to Ms. Bernhardt whether or not she would agree to compromise her case. If she had a lawyer. But she can't get the lawyer because the lawyers know that in so many of those other cases, plaintiffs have said. Because the lawyer doesn't trust her, is what I hear you saying. And the only way the lawyer will trust her that she won't go sideways on counsel is if we enter a broader injunction against her. I can only do it, but let me just, if I may, take 10 seconds to state the example. When the plaintiff seeks, let's say, $5,000 in damages, and after protracted litigation, the county offers $5,000 in settlement if you waive your attorney's fees, which by that time may be substantial. The lawyer has an obligation to advise the client to accept that. And it will be in trouble at the California bar if they don't advise her. And the record has shown, these declarations demonstrate, that time after time after time, the plaintiff follows the advice the lawyer gives, as the lawyer has to give, and takes the settlement. Makes it or takes it, either way. That's the problem. We understand. We understand. So it's not within Bernhardt's control because the lawyers won't represent her, reasonably so. All right. You have used your, more than used your time. The Court appreciates the quality of argument on both sides of the case. Thank you.
judges: Goodwin, Schroeder, Tallman